UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ALVIN BLYER, Regional Director of Region 29
of the National Labor Relations Board, for and on
behalf of the National Labor Relations Board,

                **NOT FOR PUBLICATION**
         Petitioner,            **MEMORANDUM & ORDER**
-against-                              10-CV-2975 (CBA)

JUNG SUN LAUNDRY GROUP CORP.,

         Respondent.
------------------------------------------------------------x
AMON, United States District Judge:

      The National Labor Relations Board, through its regional director, has asked the Court for a temporary injunction against Jung Sun Laundry Group. 29 U.S.C. § 160(j). The Board says that Jung Sun—which operates a laundry that services New York area hotels—engaged in unfair labor practices when it delayed several payments to an employee benefits fund and missed another payment entirely, id. § 158(a)(5), and when it refused to reinstate striking employees who the Board says offered to return to work without condition, id. § 158(a)(3). Jung Sun denies that it violated any labor laws and that, even if it did, temporary relief is unnecessary. The Board earlier filed an administrative complaint against Jung Sun that alleged these same violations and, while the Board's petition was pending before the Court, Administrative Law Judge Keltner Locke ("ALJ") ruled in its favor. Among other things, the ALJ ordered Jung Sun to reinstate the terminated employees and resume contributions to the employee benefits fund, which is the same relief that the Board has requested from this Court. Although Jung Sun had told the Court that it would comply with any adverse ruling by the ALJ (and relies on that representation in arguing that temporary relief is unnecessary), Jung Sun has not yet complied with the ruling and, in fact, recently informed counsel who had been representing it in this proceeding that it is closing for

good and no longer wishes counsel to represent it.  The Board does not believe that Jung Sun is closing and has urged the Court to rule on its petition.

For the reasons that follow, the Court concludes that the Board has proved reasonable cause to believe that Jung Sun violated the federal labor laws and that temporary relief is just and proper.

## BACKGROUND

The Court first explains the facts, which are disputed, relying on the record developed before the administrative law judge. See, e.g., Kaynard v. MMIC, Inc., 734 F.2d 950, 952 (2d Cir. 1984).  The Court then describes the procedural history of this litigation, the decision of the ALJ, and the post-decision developments in this litigation.

### Facts

The relevant actors in this action are a union, the Laundry, Dry Cleaning, and Allied Workers Joint Board, and a laundry, Jung Sun.  Jung Sun is in the business of providing laundry services to hotels in the New York metropolitan area and operates a laundry facility in Long Island City.  Before the occurrence of the events that gave rise to this petition, the Union represented all of Jung Sun's approximately 120 employees (except security and supervisors), as well as employees at many of Jung Sun's New York area competitors.

For the last twenty years, the Union and Jung Sun have operated under collective bargaining agreements.  At least since 2000, those agreements have been three-year agreements. In 2006, Jung Sun signed a collective bargaining agreement that the Union had negotiated with Unitex, one of Jung Sun's competitors.  That collective bargaining agreement contained a provision requiring that Jung Sun contribute each month to an employee benefits fund that, among other things, provided health benefits to its unionized employees.

At least as early as June 2008, Jung Sun began missing payments due that employee benefits fund. In August 2009, Timothy Clark, who oversaw the benefits fund for Amalgamated Life (the third-party administrator that managed the fund), negotiated with Jung Sun over its delinquent contributions. On August 26, the benefits fund and Jung Sun reached an agreement whereby Jung Sun would satisfy its obligations under the collective bargaining agreement by paying Amalgamated $268,725.20 over the course of about six years. Jung Sun also agreed to timely remit contributions due to the fund from that point forward.

On September 2, soon after Jung Sun settled with the fund, the Union wrote Jung Sun and expressed its desire to negotiate over a collective bargaining agreement to replace the 2006 agreement. On October 29, the Union and Jung Sun held a bargaining session at the Union's offices. On November 2, Jung Sun asked the Union to agree to extend the 2006 collective bargaining agreement through December 10, but the Union refused.

Meanwhile, Jung Sun continued to have problems timely contributing to the employee benefits fund. On November 2, Clark emailed the Union and informed it that Amalgamated would terminate health benefits for Jung Sun's employees. Amalgamated wrote Jung Sun on November 5, explained the problem with delinquent contributions, and told it that Amalgamated planned to terminate benefits on November 9. As promised, Amalgamated terminated the health benefits on November 9.

The parties held at least one more bargaining session over a new collective bargaining agreement after Amalgamated terminated Jung Sun's employees' benefits. Jung Sun says that the parties held a bargaining session on November 9, but the Union denies that this session occurred. According to Jung Sun, at that session the Union tendered its best and final offer to Jung Sun. There is apparently no dispute that the parties held a bargaining session on November

3

17 at which Jung Sun and the Union exchanged offers. The Union's offer was, according to Jung Sun, the Union's best and final offer and the Union told Jung Sun that it needed to know whether the laundry would accept those terms by Friday November 20. On November 20, Jung Sun wrote the Union asking whether the November 17 offer was indeed its "final and best offer." The Union never responded and it never submitted another offer. On November 24, Jung Sun delivered to the Union its best and final offer in response to the November 17 offer. The Union did not respond.

Tony Yang, Jung Sun's general manager, decided to go directly to his employees. See Am. Pine Lodge Nursing & Rehab. Ctr. v. NLRB, 164 F.3d 867, 875 (4th Cir. 1999) (employer may inform employees of its bargaining position). On November 25, two days before the collective bargaining agreement was set to expire, he delivered a speech at Jung Sun's Long Island City facility. The speech informed employees that Jung Sun's best and final offer reflected its desire to continue operating notwithstanding its dire financial condition. A Jung Sun employee passed a copy of the prepared text of Yang's speech, which Yang distributed to employees, to the Union. Union manager Wilfredo Larancuent testified at the administrative proceeding that he believed the prepared text, which apparently included terms for a fourth and fifth year of any collective bargaining agreement, constituted a new offer to enter a five-year collective bargaining agreement as opposed to a three-year agreement, which is what the parties had been discussing.

The Union did not contact Jung Sun about this new offer until the evening of November 27, hours before the 2006 collective bargaining agreement was set to expire. Larancuent sent a letter to Jung Sun stating that the Union considered the prepared text of the speech, which it had compared to Jung Sun's November 24 final and best offer, a new offer for a five-year collective

4

bargaining agreement. The letter also stated that the Union had never submitted a best and final offer to Jung Sun and that the Union was prepared to bargain over a new agreement. Jung Sun did not respond that night and the collective bargaining agreement expired on Friday November 27. The Union decided then that it would strike Jung Sun.

On the following Monday, the Union struck. That morning, all of Jung Sun's employees who were then working (about forty or fifty according to the Board) took their usual morning break at about 8:40 a.m. They all went outside the facility, which is apparently not the usual practice. There they met Union representative Joseph Isidore and Union business agent Alvero Bottaro. The Board says that these men explained to the employees that Jung Sun had stopped making payments to an employee benefits fund and that, consequently, the employees were no longer receiving medical benefits. When the break ended at 8:55 a.m., the employees did not return to work and instead began marching and chanting. Soon after the strike began, Jung Sun security called the police, who arrived and used barricades to create a protest zone for the strikers. Also shortly after the strike began, Yang called an employment agency and asked about replacement workers. The agency sent about twenty employees, and they arrived near 11:00 a.m.

At about noon, Isidore directed the employees to return to work and they attempted to enter through the front entrance of the facility. Two or three employees entered the facility and spoke with Kurt Schaffner, Jung Sun's head of security. The employees told Schaffner, "[W]e want to come back to work, we're ready to come back to work." Schaffner told them to wait and then reported the happening to Yang. Yang called an attorney who advised him that he did not have to welcome the strikers back to work because Jung Sun had no contract with the Union and the Union had not told Jung Sun that the strikers were prepared to return to work without

5

condition. Yang apparently told Schaffner that the employees were not permitted to return until the Union accepted Jung Sun's final and best offer. Schaffner returned to the front door and told the striking employees that they were not permitted in the facility. Isidore testified at the administrative hearing that he spoke with a security guard that morning and told the guard that the employees were prepared to return to work without condition. Jung Sun denies that anyone ever offered to return to work without condition. Isidore testified that the guard told him that the employees could not return and were, in fact, fired. He also testified that after the guard told him that the employees were fired, Yang and his partner, Steven Moy, arrived at the scene and told Isidore that the employees were terminated.

Board witnesses also testified at the administrative hearing that employees attempted a second time to enter the facility later that afternoon. At about 4:00 p.m., a handful of employees attempted to enter through a side door but were stopped by a security guard. The employees say that they told the guard that they wanted to return to work. According to their testimony, the guard told them that they could not return because they had been fired. Jung Sun's secretary was also at the door and she too told the employees that they were fired. Jung Sun denies that any employees attempted to enter the facility that afternoon.

The Union never contacted Jung Sun after the strike on November 30 and never formally offered to return the strikers to work without condition. On December 7, Jung Sun wrote the Union and informed it that Jung Sun would, "in accordance with the Law," replace the striking employees with permanent replacement workers. Jung Sun has done that.

**Procedural History**

On December 8, the Union filed an unlawful labor practice charge with the Board. The Union alleged, among other things, that Jung Sun terminated employees for participating in

union activity, i.e. striking. The Union also alleged that Jung Sun had illegally failed to make contributions to the employee benefits fund, which caused Amalgamated to terminate health benefits for Jung Sun's unionized employees. On March 30, 2010, the Board's regional director issued a complaint and notice of hearing that alleged, again among other things, that Jung Sun had done as the Union alleged in violation of federal labor law. The Board and Jung Sun participated in a hearing before an administrative law judge on June 2 through June 4, July 13 and 14, and August 2 and 4 though 6.

On June 29, while that administrative proceeding was under way, the Board filed the petition at issue in this order. The petition, relying on the same allegations upon which the administrative complaint relied, alleges that there is reasonable cause to believe that Jung Sun has violated the labor laws. Moreover, it alleges that temporary relief, requiring Jung Sun to reinstate the terminated employees and to reinstate contributions to the employee benefits fund so that those employees will have health benefits, is just and proper. It says that temporary relief is warranted as a means of re-establishing the status quo; preserving the collective bargaining process; ensuring the efficacy of any favorable administrative ruling that might ultimately be upheld by the U.S. Court of Appeals for the Second Circuit; and ensuring that employees have access to much-needed healthcare. Moreover, the petition alleges that temporary relief will not harm Jung Sun and that the terminated employees' right to reinstatement outweighs the replacement employees' interest in their jobs.

On July 9, this Court held a hearing on the petition and informed the parties that it would delay consideration of the matter until the parties had completed their evidentiary hearing before the administrative law judge. See Kaynard v. Palby Lingerie, Inc., 625 F.2d 1047, 1050 (2d Cir. 1980). The parties finished that hearing in August and provided the Court with a lengthy

7

transcript. The Court again held a hearing on September 10. At that hearing, it asked the parties whether they were willing to have the petition decided on the administrative record, and they consented. The Court then directed Jung Sun and the Board to prepare briefs (with citation of the administrative record) that address the question whether the Board is entitled to temporary relief. The parties submitted those briefs on October 1 and the Court heard argument on the briefs on October 13.

**Decision of the ALJ**

On October 21, while this petition was pending, the ALJ issued its ruling. With respect to the facts relevant to this petition, the ALJ found most of the Board's position to be well founded. As to Jung Sun's payments to the employee benefits fund, the ALJ found that Jung Sun "was clearly delinquent in its payments to the Funds when Amalgamated suspended employees' health benefits and clearly did not pay its contribution for the week ending September 11 when it was due," regardless whether it eventually paid the September 11 contribution later, a matter that the ALJ did not resolve. (ALJ Op. at 4 n.3.) As to the strike and termination, the ALJ found that after the employees failed to return from their morning break, Schaffner, at Yang's direction, closed the main door to the facility and locked it. (Id. at 8.) At about noon, three striking employees attempted to enter the facility and told Schaffner that they wished to return to work. (Id.) Schaffner consulted Yang, who told him that no strikers were to enter. Yang relayed this message to the three employees. (Id.) Near 1:30 p.m., Moy exited the facility and gave Isidore a piece of paper that stated, "'We are not permitting the strikers into our premises.'" (Id. (quoting G.C. Ex. 33).) The ALJ found that employees and Union officials conveyed this message to other employees, which ensured that employees who arrived for the afternoon shift knew of Jung Sun's refusal to permit employees to enter the facility. (Id.) At

8

about 4:00 p.m., five afternoon-shift employees attempted to enter the facility and were turned away, pursuant to Jung Sun's apparent policy of exclusion. (Id.)

The ALJ also accepted the Board's view of the law. With respect to the allegations about the delayed and delinquent contributions, the ALJ ruled that Jung Sun's conduct "led the Funds to suspend the health insurance coverage of unit employees" and its "failure to abide by the contractually required terms and conditions of employment was far from de minimis and constitutes a violation of Section 8(a)(5) and (1) of the Act, as alleged." (Id. at 11–12.) With respect to the termination of the striking employees, the ALJ ruled that Jung Sun bore the burden of proving that the strikers never offered to return to work without condition. The ALJ then ruled that "all strikers effectively offered to return to work after their brief strike on November 30 and . . . nothing in this record show[s] that those offers had any conditions attached to them. Thus, [Jung Sun's] failure to reinstate all strikers violated Section 8(a)(3) and (1) of the Act." (Id. at 12–13.)

By way of remedy, the ALJ ordered Jung Sun to "offer reinstatement to all strikers who were not permitted to return to work on November 30, 2009, and to make them whole for any loss of earnings or other benefits." (Id. at 18.) The ALJ further ordered Jung Sun to "restore the terms and conditions of employment of the union represented employees as they existed prior to its unlawful conduct, as well as any additional unilateral changes undertaken thereafter." (Id.) Jung Sun was to maintain the status quo ante "until the parties reach either an agreement or come to a good-faith lawful impasse." (Id.) The ALJ also ordered Jung Sun to bargain in good faith with the Union. (Id. at 19.)

## Post-Decision Developments

Jung Sun wrote the Court soon after the ALJ ruled against it. On October 25, it informed the Court that it would not be submitting affidavits in support of its argument that temporary relief was unnecessary because the ALJ's decision had mooted the issue. (ECF 27.) Jung Sun further stated that "in keeping with [its] representations to the Court, [it] will be discussing resolution of the ALJ's decision and other matters with the Union this week (including reinstatement of the workers)." (Id.) The Court scheduled a status conference for November 10 to discuss whether the ALJ's decision and Jung Sun's commitment to abide by it pending any administrative appeal mooted the Board's request for temporary relief. The Court also advised the parties to inform it of any resolution they might reach before the conference.

At the November 10 conference, the Court learned that the parties had not resolved their dispute. Consistent with a letter that counsel for the Union submitted to the Court prior to the conference, the parties informed the Court that Jung Sun had reinstated about thirty strikers but had not resumed payments to the employee benefits fund. Moreover, Jung Sun apparently continued to employ replacement workers in positions that should have been filled by employees who had struck and been terminated. Most significantly, the Court learned from Jung Sun's counsel that Jung Sun had told him that, as of November 9, Jung Sun no longer existed; it would be closing its doors and ceasing operations. Counsel also informed the Court that he and his firm had been terminated and asked not to represent Jung Sun in any further proceedings. Counsel for the Union, whom the Court had permitted to participate in the conference as amicus curiae, informed the Court that the Union had been watching Jung Sun's facility and that, as of November 9, the laundry appeared to be operating at full strength. She further informed the

Court that so far as the Union is concerned, Jung Sun has not ceased to exist. She asked the Court to rule on the Board's petition.

## DISCUSSION

Federal law grants the Board the right to petition a federal district court for injunctive relief pending resolution of an administrative complaint. The National Labor Relations Act "envisaged a system in which the Board would, in the first instance, consider and decide the issues arising under the Act pending before it, subject to later review by the Courts of Appeals." McLeod v. Gen. Elec. Co., 366 F.2d 847, 849 (2d Cir. 1966). Notwithstanding this preference for initial resolution by an expert administrative body, "upon issuance of a complaint . . . charging that any person has engaged in or is engaging in an unfair labor practice, [the Board may] petition any United States district court . . . for appropriate temporary relief or restraining order." 29 U.S.C. § 160(j); see also Silverman v. J.R.L. Food Corp., 196 F.3d 334, 335 (2d Cir. 1999); Hoffman v. Pennant Foods Co., No. 08-CV-008, 2008 WL 1777382, at *6 (D. Conn. Apr. 15, 2008); Blyer v. P & W Elec., Inc., 141 F. Supp. 2d 326, 328 (E.D.N.Y. 2001).

"To warrant the granting of relief under this section, the district court must find (1) reasonable cause to believe that an unfair labor practice has occurred; and (2) that [granting] injunctive relief would be just and proper." J.R.L. Food Corp., 196 F.3d at 335. With respect to the reasonable cause determination, the "district court does not need to make a final determination whether the conduct in question constitutes an unfair labor practice." Hoffman v. Inn Credible Caterers, Ltd., 247 F.3d 360, 365 (2d Cir. 2001). Although district courts should not lightly award injunctive relief, Gen. Elec. Co., 366 F.2d at 849, they must defer to the Board's view of the dispute. "With respect to issues of fact, the Regional Director should be given the benefit of the doubt, and on questions of law, the Board's view should be sustained

11

unless the court is convinced that it is wrong." Palby Lingerie, Inc., 625 F.2d at 1051 (internal citation and quotations omitted); see also Kaynard v. Mego Corp., 633 F.2d 1026, 1031 (2d Cir. 1980); Danielson v. Joint Bd. of Coat, Suit, & Allied Garment Workers Union, 494 F.2d 1230, 1245 (2d Cir. 1975) ("When 'reasonable cause to believe' turns on disputed issues of fact, the Regional Director may assume these in favor of the charge and the district court should sustain him if his choice is within the range of rationality."). And although the Board need not await an ALJ decision before requesting temporary relief in federal court, where as here the ALJ has ruled, federal courts should accord the ALJ's factual and legal conclusions reasonable deference in adjudicating the Board's petition. See J.R.L. Food Corp., 196 F.3d at 337–38; Pennant Foods Co., 2008 WL 1777382, at *6. With respect to the question whether temporary relief is just and proper, "In this Circuit, injunctive relief . . . is just and proper when it is necessary to prevent irreparable harm or preserve the status quo" as it existed "before the unfair labor practice occurred." Inn Credible Caterers, 247 F.3d at 368, 369. "While this standard preserves traditional equitable principles governing injunctive relief, [this Court is] mindful to apply them in the context of federal labor laws." Id. at 368; see also Seeler v. Trading Port, Inc., 517 F.2d 33, 40 (2d Cir. 1975) (temporary relief appropriate where it will further the purposes of the National Labor Relations Act).

The Court now turns to the two issues before it; namely, whether the Board has established reasonable cause to believe that Jung Sun violated the labor laws and whether the Board has established that temporary relief would be just and proper. The Court resolves both issues in favor of the Board.

12

## Reasonable Cause

At oral argument on its petition, the Board represented to the Court that it is seeking relief principally on the ground that Jung Sun illegally terminated striking employees and that it is not necessary for the Court to address the other claim in its papers that Jung Sun illegally delayed and withheld contributions to the employee benefits fund. In light of the Board's position and since the requested relief does not turn on the question whether Jung Sun illegally caused Amalgamated to terminate benefits in November 2009, the Court will not address the issue of delayed and delinquent contributions.

With respect to the termination of striking employees, the Board says that the unionized workers who struck on November 30 were "economic" strikers who were entitled to their jobs so long as they offered to return to Jung Sun without condition before they were permanently replaced. It says that they did that. Jung Sun answers that the employees, who it also characterizes as economic strikers, never offered to return to work without condition and that Jung Sun was entitled to replace those workers, which it did. Thus, the parties agree that the critical question with respect to the allegation that Jung Sun violated section 158(a)(3) is whether the striking employees offered to return to work without condition.

The Court finds reasonable cause to believe that Jung Sun's unionized employees offered to return to work without condition such that Jung Sun had an obligation to reinstate them on November 30. Giving the Board's and the ALJ's view of the facts the benefit of the doubt, the Court finds that on November 30 two separate groups of employees attempted, one at about noon and another at about 4:00 p.m., to return to work and communicated to Jung Sun security their desire to return without condition. That message, at least at noon, was communicated to Jung Sun management. The Court further concludes that those two informal communications of the

position of the Union were sufficient to require Jung Sun to welcome back its unionized employees. See Fun Striders, Inc., 255 N.L.R.B. 1351, 1360 (1981) ("They simply attempted to enter the plant in a normal manner at the beginning of their shift and were prevented from doing so with no explanations."); cf. Proxy Commc'ns of Manhattan, Inc. v. NLRB, 873 F.2d 552, 555 n.3 (2d Cir. 1989) ("Offers are usually considered unconditional as long as they do not include demands for specific wages or working conditions."). Moreover, even if the employees did not adequately communicate their willingness to return without condition, the Court finds reasonable cause to believe that such an offer would have been futile. When the employees attempted to return to work on November 30, security turned them away and, according to the Board's witnesses, informed them that they had been terminated. Moreover, Isidore received a note informing him that the striking employees were not welcome at work. As the ALJ recognized, on those facts, the employees did not have to formally offer to return without condition—such an offer would have been futile. See Dino & Sons Realty Corp. v. NLRB, 37 F. App'x 566, 570 (2d Cir. 2002); Fun Striders, Inc., 355 N.L.R.B. at 1360 ("Considering the action of the guard in barring them from the plant and statements by [managers] Atkins and MacNichol that they had been replaced, any attempts to voice an unconditional offer to return to work would have been futile and, in the circumstances, is not a prerequisite to their right to reinstatement.").

In accepting the Board's position, the Court does not mean to encourage the conduct of the Union in connection with this dispute. The Union easily could have communicated to Jung Sun—either on November 30 or any day thereafter, until December 7—the fact that its members wanted to return to work without condition. This practice is not uncommon. See, e.g., NLRB v. Heads & Threads Co., 724 F.2d 282, 286 (2d Cir. 1983) (union sent telegram stating, "On behalf of each and every striking employee, we hereby make an unconditional offer on their behalf to

14

return to work immediately"). Perhaps if the Union had done this, much of this litigation could have been avoided. In disputes like the one at issue here, labor and management should endeavor, so far as possible, to communicate openly.

## Just and Proper

The Board contends that temporary relief requiring Jung Sun to reinstate the terminated employees on the terms that were in effect when they were illegally terminated on November 30—which means the terms of the 2006 collective bargaining agreement, NLRB v. Katz, 369 U.S. 736, 743 (1962)—is just and proper for several reasons. It says that the Court should order that relief to re-establish the status quo; preserve the collective bargaining process; ensure the efficacy of any favorable administrative ruling that might ultimately be upheld by the U.S. Court of Appeals for the Second Circuit; and ensure that Union employees have access to much-needed health care. Jung Sun highlights several facts in support of its argument that temporary relief is unwarranted. It argues that there is no evidence that the Union is losing bargaining power; there is no evidence that the striking employees, some of whom have secured other work, are interested in returning; and the Board's failure to move quickly for an injunction shows that it can wait for the administrative process to run its course. Jung Sun also argues in its papers that relief is unwarranted because it will abide by any adverse ALJ ruling, although for reasons the Court has explained this argument now seems disingenuous.

The Court grants temporary relief as just and proper. Several considerations support this result. First, as a general consideration, the Board here is not requesting relief based upon a novel interpretation of the federal labor laws. As the Court has said, there is no dispute that refusing to reinstate strikers who offer to return without condition before they have been permanently replaced constitutes an illegal employment practice. This litigation does not

involve an "unprecedented application of the Act." Silverman v. 40-41 Realty Assocs., Inc., 668 F.2d 678, 680 (2d Cir. 1982). This case merely turns on a few disputed questions of fact and the application of settled law to those facts. Id. at 681. In this setting, temporary relief is "especially appropriate." Id.

Second, the "conditions as they existed before the company's unlawful campaign must be re-established." MMIC, Inc., 734 F.2d at 953. Before Jung Sun allegedly violated the federal labor laws, it employed the employees whom the Board is asking us to reinstate and it had a legal obligation to provide those employees health coverage. See Katz, 369 U.S. at 743. If the Court does not award temporary relief, Jung Sun will not employ those individuals and provide them health care pending resolution of the Board's administrative complaint. As will often be the case in this class of petitions, relief pending resolution of the administrative complaint is necessary to restore the status quo ante.

Third, refusing to reinstate the terminated employees would cause irreparable harm. At the October 13 hearing, the Board offered the testimony of several terminated Jung Sun employees who explained how they and others had lost their company healthcare and been denied Medicaid or found Medicaid coverage inadequate. One employee explained that he had been unable to secure treatment for a throat condition. That same employee testified that his wife had recently miscarried and that he had been unable to take her to see a gynecologist. Another explained that he had been unable to secure treatment for a back condition. Yet another explained that he had been afraid to seek treatment through Medicaid for fear that he would be billed and would not be able to afford the bill. After the hearing, the Board submitted affidavits from about sixty two employees, many of whom testified to similar difficulties securing health coverage. No future administrative order can remedy this problem. On these facts, temporary

relief is just and proper. Mattina, 2008 WL 3833949, at *25 & n.62 (where failure to remit contributions to benefits fund "directly led to the termination of health coverage for the Employees, the threat of irreparable harm to the Employees is tragically obvious"). Similarly, several affiant employees report difficulties paying rent and face the threat of eviction. Damages to compensate for a period of homelessness will be difficult if not impossible to calculate if and when the Board secures permanent relief from Jung Sun. McNeill v. New York City Hous. Auth., 719 F. Supp. 233, 254 (S.D.N.Y. 1989) (threat of eviction and realistic prospect of homelessness constitute irreparable harm for purposes of deciding propriety of preliminary injunctive relief). Accordingly, temporary relief is justified to prevent this harm as well.

Jung Sun's arguments against relief are not convincing. Jung Sun says that relief obviously is not necessary because the Board has not treated it as necessary. It observes that the Board did not file this petition for temporary relief until the very end of June 2010, even though the Union had complained to the Board in December 2009 and the Board had initiated an administrative proceeding against Jung Sun at the beginning of March 2010. See Silverman v. Local 3, Int'l Broth. of Elec. Workers, 634 F. Supp. 671, 673 (S.D.N.Y. 1986) (three month delay "seriously, indeed fatally, undermines the Board's position that an injunction is necessary"). This is not a concern. The "Board does not take lightly the commencement of a § 10(j) action," MMIC, Inc., 734 F.2d at 954, and "it is inappropriate to punish employees for the Regional Director's delay," Blyer v. Pratt Towers, Inc., 124 F. Supp. 2d 136, 147 (E.D.N.Y. 2000). The Court will only consider delay where delay "leads to a change in circumstances which affects the appropriateness of the relief requested" and there is no allegation that that is the case here. Dunbar v. Carrier Corp., 66 F. Supp. 2d 346, 354 (N.D.N.Y. 1999). Finally, given Jung Sun's conduct in the several weeks since the ALJ ruled against the laundry, Jung Sun's

17

promise to abide by an adverse ruling pending appeal does not now counsel against relief.

In sum, temporary relief is just and proper to restore the status quo, prevent irreparable harm, and further the ends of the National Labor Relations Act. Accordingly, the Court orders Jung Sun, pending final resolution of the administrative complaint, to reinstate the terminated employees and restore to them the terms and conditions contained in the collective bargaining agreement that expired on November 27, 2009.

## CONCLUSION

For the foregoing reasons, the Board's petition for temporary injunctive relief is granted. Accordingly, it is hereby

ORDERED that the Board's petition for temporary relief is granted, and it is further

ORDERED that pending the final disposition of the matters involved herein pending before the National Labor Relations Board, Jung Sun Laundry Group Corp. shall,

(a) Cease and desist from:

(1) Failing and refusing to allow strikers to return to work upon their offer to return to work without condition;

(2) Unilaterally imposing or changing the terms and conditions of employment of the employees named in Exhibit A of the Complaint in Case No. 29-CA-29946, including but not limited to those terms and conditions in the most recent expired collective bargaining agreement of the parties, in the absence of a valid impasse;

(3) In any other manner interfering with, restraining, or coercing employees in the exercise of rights guaranteed to them by 29 U.S.C. §§ 158(a)(3), (5); and

(b) Take the following affirmative action necessary to effectuate the policies of the National Labor Relations Act:

(1) Restore to the union represented employees named in Exhibit A of the Complaint in Case No. 29-CA-29946 the terms and conditions of employment that were in effect prior to the unilateral changes Jung Sun Laundry Group Corp. effectuated after the expiration of the collective bargaining agreement that expired on November 27, 2009 and continue those in effect until the parties reach an agreement or good faith bargaining impasse;

(2) Offer full reinstatement to all employees named in Exhibit A of the Complaint in Case No. 29-CA-29946 to their former jobs, displacing if necessary any newly hired or reassigned workers and transferring back any transferred or subcontracted workers or, if those jobs no longer exist, to a substantially equivalent job, without prejudice to their seniority or any other rights or privileges previously enjoyed.  If an inadequate number of substantially equivalent jobs exist, place the remaining discharged employees on a non-discriminatory preferential hiring list and recall the employees in a manner consistent with their recall rights and privileges previously enjoyed;

(3) Post copies of this memorandum and order in English, Spanish, Creole, Mandarin, and Bengali, with translations supplied by Jung Sun Laundry Group Corp. and approved by the Board, at all locations where employer notices to employees are customarily posted; maintain such notices free from all obstructions or defacements pending resolution of the Board's administrative complaint; and grant to agents of the Board reasonable access to the Jung Sun Laundry Group Corp. facility to monitor compliance with this posting requirement;

(4) Within twenty (20) days of the issuance of this memorandum and order, file with the Court and serve upon the Board a sworn affidavit from a responsible Jung Sun Laundry

Group Corp. official that describes with specificity how Jung Sun Laundry Group Corp. has complied with the terms of this decree.

SO ORDERED.

Dated: Brooklyn, New York
November 15, 2010

_____/s/_____
Hon. Carol B. Amon
United States District Judge